**FILED**

MAY 15 2024

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RICHARD BRENDAN GLOBENSKY

24 CR 190

Hon. Sharon J. Coleman

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant RICHARD BRENDAN GLOBENSKY, and his attorney, THOMAS CHURCH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The information in this case charges defendant with transporting and transferring in interstate commerce stolen goods of the value of $5,000 or more, in violation of Title 18, United States Code, Section 2314.

3.      Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with transporting and

transferring in interstate commerce stolen goods of the value of $5,000 or more, in violation of Title 18, United States Code, Section 2314.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Beginning no later than 2009 and continuing until in or around August 2022, at Augusta, in the Northern District of Georgia, and elsewhere, defendant RICHARD BRENDAN GLOBENSKY caused to be transported and transferred in interstate commerce goods, wares, and merchandise of the value of $5,000 or more, knowing the same had been stolen, converted and taken by fraud, in violation of Title 18, United States Code, Section 2314.

### *Background*

Specifically, Augusta National Golf Club (ANGC) was a private golf club located in Augusta, Georgia. Since 1934, ANGC hosted the Masters Tournament. ANGC annually purchased large quantities of Masters Tournament merchandise from various wholesale vendors, which ANGC sold at retail to members of the public during the week of the Masters Tournament. ANGC had exclusive rights to sell Masters Tournament merchandise to the public, and generally did not make Masters

2

Tournament merchandise available for sale outside of the Masters Tournament week. ANGC stored large quantities of Masters Tournament merchandise in a warehouse on ANGC grounds.

In or around 2007, ANGC hired GLOBENSKY as a Warehouse Assistant. In that role, GLOBENSKY was responsible for, among other things, overseeing the receipt and storage of Masters Tournament merchandise at ANGC, and maintaining records used to conduct the post-Masters Tournament merchandise audits.

### The Theft and Sale of Masters Tournament Merchandise

Beginning no later than 2009 and continuing until approximately 2022, GLOBENSKY regularly stole large quantities of Masters Tournament merchandise—including t-shirts, jackets, hats, flags, chairs, watches, mugs, and other items—from the ANGC warehouse. GLOBENSKY sold the stolen Masters Tournament merchandise to Individual A, who owned and operated two online businesses based in Florida that specialized in selling and auctioning Masters Tournament merchandise and memorabilia. Individual A regularly sent GLOBENSKY requests for specific types of Masters Tournament merchandise that Individual A sought to sell to Business 1 customers. GLOBENSKY surreptitiously photographed the items he could steal from the ANGC warehouse and sent the photographs to Individual A. GLOBENSKY and Individual A then negotiated a sales price and, once an agreement was reached, coordinated on the delivery of the stolen items to Individual A.

3

GLOBENSKY stole the merchandise from the ANGC warehouse by loading it into a truck and transporting the merchandise to an offsite storage facility that he maintained in Augusta. GLOBENSKY stole a portion of these goods after the Masters Tournament had already occurred. GLOBENSKY and Individual A then arranged for Individual A to travel from Florida to Augusta, Georgia, to receive the stolen merchandise at GLOBENSKY's storage facility and transport it back to Florida, or GLOBENSKY shipped the stolen merchandise to Individual A in Florida using commercial carriers such as UPS. Individual A then arranged for Business 1 to issue payment to GLOBENSKY for the stolen merchandise. Business 1 resold the stolen merchandise online, often at significant markups from what Individual A had paid GLOBENSKY.

GLOBENSKY took steps to conceal his involvement in the theft and sale of the Masters Tournament merchandise. For example, GLOBENSKY stole goods in quantities that he knew fell below ANGC's auditing risk thresholds. GLOBENSKY also directed Individual A to have Business 1 issue the majority of payments to GLOBENSKY in the name of GLOBENSKY's wife. Later, when informed by Individual A that Business 1 intended to begin issuing 1099s for such payments, GLOBENSKY set up an LLC that was used only for receiving payments for items that GLOBENSKY stole from ANGC. When GLOBENSKY shipped stolen merchandise to Individual A, GLOBENSKY, at Individual A's direction, often shipped the items addressed to a third-party stand-in business in order to disguise

4

that Business 1 was the intended recipient of the packages. Further, Individual A and GLOBENSKY regularly discussed how Business 1 should only sell specific types of Masters Tournament merchandise that: (1) had been (or would be) legitimately sold by ANGC at retail during the Masters Tournament week; or (2) was undated, and therefore could not be traced to a specific Masters Tournament.

During the offense, in total, GLOBENKSY was paid approximately $5,305,911 by Business 1 for Masters Tournament merchandise that he stole from ANGC.

### The Theft and Sale of Masters Tournament Historical Memorabilia

In addition to annually selling Masters Tournament merchandise to the public, ANGC preserved and stored various types of historical Masters Tournament memorabilia on its grounds, including many of the signature green sports jackets annually awarded to the Masters Tournament champion, trophies, programs, tickets, letters, and other items.

In or around 2009, GLOBENSKY began stealing from ANGC various Masters Tournament historical memorabilia items, which GLOBENSKY was able to access through his employment at ANGC. GLOBENSKY agreed with Individual A and others, including Individual B, an associate of Individual A, to sell and/or auction the stolen memorabilia in interstate commerce. Between 2009 and 2022, GLOBENSKY stole multiple items of historical memorabilia from ANGC and sold them in interstate commerce, including the following:

- Arnold Palmer's Masters Tournament Green Jacket;

5

- Ben Hogan's Masters Tournament Green Jacket;

- Gene Sarazen's Masters Tournament Green Jacket;

- Masters Tournament programs from 1934 and 1935;

- An Augusta National clubhouse trophy;

- Masters Tournament tickets from 1934, 1935, 1936, 1937, 1938, and 1939;

- August National Golf Club pickard porcelain bowl;

- Masters Tournament records from 1942;

- 2009 Masters commemorative putter;

- Documents and letters written and signed by Bobby Jones;

- An Augusta National stock book.

- Augusta National unissued share of stock from 1932 hand signed by Fielding Wallace.

- Various Masters' Tournament and Augusta National members gifts from 1964 – 2007.

Between approximately 2009 and 2022, Individual A/Business 2 and Individual B paid GLOBENSKY approximately $297,387 for the historical memorabilia that he stole from ANGC. Individual A/Business 2 and Individual B later resold much of these historical memorabilia at significantly marked up prices.

GLOBENSKY acknowledges that, as a result of his theft of Masters Tournament merchandise and historical memorabilia, he is responsible for approximately $3,448,842 in actual loss to ANGC.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 10 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.     Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

7

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2021 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     The base offense level for the offense is 6, pursuant to Guideline § 2B1.1(a)(2).

ii.     The offense level is increased by 16 levels pursuant to Guideline § 2B1.1(b)(1)(L) because the amount of loss for which defendant is

accountable is approximately $3,448,842, which is more than $1,500,000 and less than $3,500,000.

   iii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   iv.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   v.  Pursuant to Guideline § 4C1.1(a), the offense level is reduced by two levels because defendant meets all criteria set forth in this section.

   c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts

9

now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10

f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.      Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

12.      Defendant's cooperation will also include, within 7 days of the entry of his guilty plea, delivery to the U.S. District Court of a cashier's or bank check payable to the "Clerk of the Court" in the amount of $1,571,767.70, to be applied by the Clerk of the Court to his restitution obligation upon the entry of judgment at sentencing,

11

and that amount will also be applied to the forfeiture judgment described in paragraph 21.

### Agreements Relating to Sentencing

13.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this agreement, then the government shall move the court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable guideline range in an amount to be determined by the government at the time of sentencing. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

14.     If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

15.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum

penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

16.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to Augusta National Golf Club is $3,448,842, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

17.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

18.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

19.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), and Title 31, United States Code, Sections 3711, 3716, and 3728, notwithstanding any payment schedule set by the Court. In the event

of the death or dissolution of, or the government's inability to locate the named recipient of restitution in the Judgment and Commitment Order, the defendant agrees to not oppose efforts by the government to obtain an order substituting as payee a representative of the victim's estate, another family member, or any other person or successor entity appointed as suitable by the court, or the Crime Victims Fund.

### Forfeiture

20. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense and any property involved in the offense.

21. Defendant agrees to forfeiture of the following specific property to the United States: a personal money judgment of $5,305,911, representing the amount of money GLOBENSKY personally earned through his sale of stolen ANGC merchandise and historical memorabilia. In doing so, defendant admits that the property described above represents proceeds defendant obtained as a result of the offense, and property involved in the offense, as alleged in the information. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby extinguishing any right, title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property so that it may be disposed of according to law.

14

22.     Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

23.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture and/or abandonment carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture or abandonment and will not assist any third party with regard to such challenge or review.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

24.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 24 CR 190.

25.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

26.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

27.     Defendant understands that, by pleading guilty, he surrenders certain rights, including the following:

16

a.   **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.   **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.   The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.   If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.   If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving

17

defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    c.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

     d.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

e.      Defendant understands that he has the right to have the criminal charges in the superseding information brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the superseding information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges brought.

28.      Defendant understands that, by pleading guilty, he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

29.      Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charge against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

## Presentence Investigation Report/Post-Sentence Supervision

30.      Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation

20

and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

31.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

32.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to

21

disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

33. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

34. Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and his spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

    a. Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his spouse and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

35. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to

Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his spouse or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant and his spouse or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

36.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

37.     The United States agrees not to seek additional criminal charges in the Northern District of Illinois against defendant for the events between 2009 and August 2022, which he has described in his proffer statements provided to the United States. However, nothing in this Agreement limits the United States in prosecution of defendant in other districts or for crimes not disclosed in his proffer statements, except as expressly set forth in this Agreement.

## Conclusion

38.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

39.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

40.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

41.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

42.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____May 15, 2024_____

SARAH STREICKER  Digitally signed by SARAH STREICKER
Date: 2024.05.10 13:26:03 -05'00'
Signed by Sarah Streicker on behalf of
MORRIS PASQUAL
Acting United States Attorney

RICHARD BRENDAN GLOBENSKY
Defendant

SEAN FRANZBLAU
Assistant U.S. Attorney

THOMAS CHURCH
Attorney for Defendant

25